FILED

2024 Aug-08  PM 03:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CLEMENTINA ORTIZ MEJIA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:22-cv-1087-AMM** |
| | ) | |
| **CITY OF BIRMINGHAM,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT

This case is before the court on motions for summary judgment filed by defendant Luxe Ultra Lounge ("Luxe"), Doc. 36, and defendant City of Birmingham (the "City"), Doc. 39. For the reasons explained below, the court **GRANTS** the motion filed by the City. The court declines to exercise supplemental jurisdiction over Plaintiff Clementina Ortiz Mejia's remaining state-law claim against Luxe, and **DISMISSES** that claim **WITHOUT PREJUDICE**. Thus, the motion for summary judgment filed by Luxe is **DENIED** as **MOOT**.

## I.    BACKGROUND

### A.    Relevant Facts

These are the undisputed material facts in the light most favorable to the nonmovant, Ms. Mejia.

Luxe is a nightclub in Birmingham that is open to the public. Doc. 35-3 at 3, Dep. 7:7–12. Ms. Mejia arrived at Luxe just after midnight on December 11, 2021. Doc. 35-1 at 3, Dep. 11:1–5; *id.* at 7, Dep. 26:1–3. A friend paid her cover charge, and Ms. Mejia received a wristband and entered the club. *Id.* at 8, Dep. 30:16–31:3, Dep. 31:14–18. Ms. Mejia stayed inside Luxe for about twenty minutes and then left the club to return to her car to change her shoes. *Id.* at 10, Dep. 38:6–9, Dep. 39:17–22.

When Ms. Mejia tried to re-enter Luxe five minutes later, a Luxe security guard told her that she could not re-enter unless she paid the cover charge again. *Id.* at 11, Dep. 43:1–2, 16–22. It is unclear whether the Luxe security guard asked Ms. Mejia to leave, which she did not do, or whether he insisted that she pay the cover charge if she wanted to re-enter Luxe. *Compare id.* at 21, Dep. 84:10–17, *with id.*, Dep. 84:18–22.

Brandon Jones—an off-duty police officer for the City—was moonlighting as security at Luxe at the time of the incident. Doc. 33-1 at 3; Doc. 33-2 at 11, Dep. 36:17–37:5. Unlike the Luxe security guards, City police that worked as security wore their City police uniforms according to City policy. Doc. 35-1 at 12, Dep. 45:15–19; Doc. 33-2 at 6, Dep. 17:1–5.

What happened next is hotly disputed. According to Ms. Mejia, while she was speaking with the Luxe security guard hoping to re-enter the club, Officer Jones

2

approached her and told her to leave. Doc. 42-1 at 0:00; Doc. 35-1 at 12, Dep. 47:5–8. According to Ms. Mejia, Officer Jones then began pushing her backwards and she lifted her hands in front of her chest. Doc. 35-1 at 12, Dep. 48:5–22; *id.* at 16, Dep. 63:6–9. Ms. Mejia alleges that Officer Jones then repeatedly struck her in the head with his fist. *Id.* at 12, Dep. 48:5–22; *id.* at 16, Dep. 63:23–64:2; Doc. 1 ¶ 18.

Minutes later, Ms. Mejia alleges that she saw Officer Jones walking around her and she lifted her right leg to keep distance between herself and Officer Jones. Doc. 42-5 at 1:32; Doc. 35-1 at 13, Dep. 50:5–11; *id.* at 17, Dep. 67:1–17; *id.* at 20, Dep. 78:10–13. Officer Jones then struck Ms. Mejia in the head again and knocked her to the ground. Doc. 42-5 at 1:33; Doc. 35-1 at 15, Dep. 58:13–17; *id.* at 20, Dep. 79:4–7. Ms. Mejia was then handcuffed and taken to the City jail. *Id.*, Dep. 79:2–3; *id.* at 25, Dep. 99:16–19. She was released from jail approximately two days later. *Id.* at 18, Dep. 70:2–6.

Ms. Mejia admits that she does not have any evidence that the City has a policy or custom of assaulting people without cause, *id.* at 31, Dep 121:17–21. And she does not dispute that the City does not have a policy or custom of falsely arresting or falsely imprisoning persons. *See* Doc. 33-1 at 9–11.

## B. Procedural History

Ms. Mejia filed this suit in August 2022. Doc. 1. She asserted claims of excessive force and false arrest under 42 U.S.C. § 1983 against Officer Jones and

the City. *Id.* ¶¶ 29–40. Ms. Mejia asserted a claim of false imprisonment against the City under § 1983. *Id.* ¶¶ 41–45. Ms. Mejia also asserted a state-law claim of vicarious liability against Luxe. *Id.* ¶¶ 46–50.

In January 2023, Ms. Mejia moved for the court to dismiss her claim against Officer Jones without prejudice, Doc. 18 at 1, and the court granted that motion, Doc. 19.

Luxe, Doc. 36, and the City, Doc. 39, filed motions for summary judgment in October 2023. The City filed an unopposed motion for extension of time to consider its late brief timely filed, and that motion is **GRANTED**. Doc. 41. The motions are fully briefed. Docs. 43–45.

## II.   LEGAL STANDARDS

A party moving for summary judgment must establish "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (cleaned up). A material fact is in "genuine" dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (cleaned up). In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

4

242, 249 (1986). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (cleaned up). "But in cases where a video in evidence obviously contradicts the nonmovant's version of the facts, we accept the video's depiction instead of the nonmovant's account, and view the facts in the light depicted by the videotape." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (cleaned up).

## III.   ANALYSIS

At the outset, a clarification is necessary. The City and Luxe assert that Ms. Mejia's opposition to summary judgment asserts new claims. According to the City, Ms. Mejia asserts new state-law claims against the City in her opposition to summary judgment. *See* Doc. 45 at 11. Likewise, Luxe argues that Ms. Mejia "did not plead vicarious liability based on actions of Luxe personnel," Doc. 37 at 19 (cleaned up), and that "any newly asserted claim against Luxe based on the acts of any other person besides [Officer] Jones is foreclosed. *Id.* at 20.

To the extent that Ms. Mejia attempts to plead any new claims that are not included in her complaint, she may not do so. The liberal pleading standard under Rule 8 of the Federal Rules of Civil Procedure "does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004); *see also Flintlock Const.*

*Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1228 (11th Cir. 2013) (cleaned up) ("[P]recedent . . . precludes a plaintiff from amending its complaint through argument at the summary judgment phase of proceedings.").

The court declines to consider any claim that Ms. Mejia did not plead in her complaint.

### A.    Ms. Mejia's Section 1983 Claims Against the City

The City seeks summary judgment on all three claims Ms. Mejia asserts against it under § 1983. Ms. Mejia's excessive force claim (Count I) is based on her assertion that Officer "Jones violated [her] civil rights by repeatedly punching her in the face." Doc. 1 ¶ 32. Ms. Mejia's false arrest claim (Count II) is based on her assertion that Officer "Jones violated [her] civil rights by unlawfully detaining her and placing her under arrest without probable cause." *Id.* ¶ 38. And Ms. Mejia's false imprisonment claim is based on her assertion that "[t]he City . . . violated [her] civil rights by unlawfully detaining her in the City Jail." *Id.* ¶ 44.

The City argues that it is entitled to summary judgment on those claims under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). "The Supreme Court has placed strict limitations on municipal liability under § 1983 [and a] county's liability under § 1983 may not be based on the doctrine of respondeat superior." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc). "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1)

that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "It is not sufficient for a government body's policy to be tangentially related to a constitutional deprivation." *Cuesta v. Sch. Bd. of Miami– Dade Cnty.*, 285 F.3d 962, 967 (11th Cir. 2002). The policy or custom must be "the moving force behind the constitutional violation." *Grech*, 335 F.3d at 1330 (cleaned up). The City argues that Ms. "Mejia has not pointed in her complaint to any policy that caused her alleged injuries." Doc. 39-1 at 14.

The City argues in the alternative that if Ms. Mejia pointed to a policy that caused her alleged injuries, the City's policies are facially constitutional. "If a facially-lawful municipal action is alleged to have caused a municipal employee to violate a plaintiff's constitutional rights, the plaintiff must establish that the municipal action was taken with deliberate indifference as to its known or obvious consequences." *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1187 (11th Cir. 2011) (cleaned up). In other words, to prevail on a claim seeking municipal liability concerning a facially constitutional policy, the plaintiff must prove that "that the [municipality] knew its policies would result in constitutional violations" or offer "evidence that it was obvious such violations

would occur." *Id.* at 1188. When "none of the policies in question . . . are facially unconstitutional, [it] presents the plaintiffs with a difficult task." *Id.* at 1187.

Further, the City argues that one incident is not enough "to establish municipal liability under *Monell*." Doc. 39-1 at 15 (cleaned up). Under binding Eleventh Circuit precedent, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality." *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (cleaned up). "A single incident would not be so pervasive as to be a custom, because a custom must be such a longstanding and widespread practice that it is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Id.* (cleaned up). This standard "prevents the imposition of liability based upon an isolated incident, and ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id.* (cleaned up).

Ms. Mejia responds that the City "had a policy that required all officers who provided security for non-governmental agencies to wear their police uniforms even when performing secondary functions such as doorman or bouncer and this policy was the proximate cause of [her] being illegally assaulted, arrested and incarcerated." Doc. 43 at 24. Ms. Mejia argues that the City "authorized [Officer] Jones to work for Luxe, required [Officer] Jones to wear his police uniform while

working for Luxe, and required [Officer] Jones to comply with City . . . Rules and Regulations while working for Luxe." *Id.* at 25.

In support of her argument, Ms. Mejia cites *City of Birmingham v. Thompson*, 404 So. 2d 589, 590 (Ala. 1981), in which the Alabama Supreme Court upheld a finding of liability against the City of Birmingham for a "battery . . . committed by 'unskillfulness,' i. e., a form of negligence." According to Ms. Mejia, because the City's "response to the incident" was unskilled, "the City . . . is not immune." Doc. 43 at 27. Ms. Mejia also cites *Lee v. Ferrano*, 284 F.3d 1188, 1199 (11th Cir. 2002), in which the Eleventh Circuit held that an officer was not entitled to qualified immunity on a claim of excessive force after he "slam[med]" an arrestee's "head against the trunk *after* she was arrested, handcuffed, and completely secured, and after any danger to the arresting officer as well as any risk of flight had passed." Ms. Mejia further contends that the City "ratified" Officer Jones's conduct "by placing [Ms.] Mejia in handcuffs and locking her in jail." Doc. 43 at 28.

The City replies that Ms. "Mejia did not point, in her complaint, to any policy that caused her alleged injuries[]" and that she may not now amend her complaint at summary judgment. Doc. 45 at 7; *Gilmour*, 382 F.3d at 1315 ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). The City further argues that the alleged policy that required police officers to wear their uniforms for security jobs was "not the 'moving force' [that] caus[ed] [Ms.]

Mejia's alleged deprivation and the policy is facially constitutional." Doc. 45 at 8. According to the City, Ms. "Mejia has offered no evidence that the wearing of a police uniform was the causal link and 'moving force' to her alleged constitutional injury." *Id.* And with respect to Ms. Mejia's argument that "the City ratified [Officer] Jones's assault upon [Ms.] Mejia by placing [her] in handcuffs and locking her in jail," the City contends that Ms. "Mejia has not cited any case or law concerning ratification." *Id.* at 10 (cleaned up).

The City is entitled to summary judgment because Ms. Mejia has failed to show "that the [City] had a custom or policy that constituted deliberate indifference to [a] constitutional right; and . . . that the policy or custom caused the violation." *McDowell*, 392 F.3d at 1289. At most, Ms. Mejia has speculated that the City's policy that required police officers to wear their uniforms while they provided security proximately caused the alleged constitutional violations she suffered in this case. Doc. 43 at 24. She has not developed any evidence that the clothes Officer Jones was wearing—his police department uniform—had anything to do with the injuries she experienced. "Contentions based on mere speculation and conjecture cannot defeat summary judgment." *Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th 1343, 1351 (11th Cir. 2024) (cleaned up).

Further, Ms. Mejia does not contend that the City's policy requiring police officers to wear uniforms when they provided security as a secondary job violates

the Constitution. Because the policy is facially constitutional, to prevail on her

§ 1983 claims against the City, Ms. Mejia would need to show that the City "knew

[this] polic[y] would result in constitutional violations" or offer "evidence that it was

obvious such violations would occur." *Am. Fed'n of Lab. & Cong. of Indus. Orgs.*,

637 F.3d at 1188. Ms. Mejia does not attempt to make this showing.

Finally, Ms. Mejia cannot overcome binding Eleventh Circuit precedent

foreclosing her claim, as "[p]roof of a single incident of unconstitutional activity is

not sufficient to impose liability against a municipality." *Craig*, 643 F.3d at 1310

(cleaned up).

Ms. Mejia seeks relief from the City under a theory of *respondeat superior*,

which Eleventh Circuit precedent strictly forbids. *Grech*, 335 F.3d at 1329. Her

citation of authority does not address this problem: *Thompson* is a case concerning

application of state law, not Section 1983, 404 So. 2d at 590, and *Lee* concerns

qualified immunity for an individual officer, not municipal liability, 284 F.3d at

1199.

The City's motion for summary judgment on Counts I, II, and III is

**GRANTED**.

### B.   Ms. Mejia's Vicarious Liability Claim Against Luxe

Luxe seeks summary judgment on Ms. Mejia's sole claim she asserts against

it: a state-law claim of vicarious liability based on the actions of Officer Jones. *See*

11

Doc. 37. But because the court has disposed of all of Ms. Mejia's federal claims, Eleventh Circuit precedent counsels this court to dismiss this remaining state-law claim.

Under 28 U.S.C. § 1367(c)(3), a "district court[] may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." Indeed, "[w]hen all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018). "Although the district court has discretion, concerns of federalism—namely, of federal courts of limited jurisdiction weighing in on state law—counsel in favor of dismissing state-law claims after the federal claims are dismissed." *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 866 (11th Cir. 2022). "The Supreme Court has also put a thumb on the scale: '[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise [pendent] jurisdiction . . . .'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

To determine whether to dismiss Ms. Mejia's remaining state law claim, the court must consider the factors of judicial economy, convenience, fairness, and comity. *See Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 537 (11th Cir. 2015). Comity and judicial economy are best served by dismissing Ms. Mejia's claim

without prejudice to her opportunity to refile the claim in state court, because "[b]oth comity and economy are served when issues of state law are resolved by state courts." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). The questions relevant to Ms. Mejia's vicarious liability claim and the defense Luxe offers against that claim are questions of Alabama law that are best resolved by Alabama state courts. And there is no reason for this court to conclude that convenience or fairness weigh in favor of retaining supplemental jurisdiction over Ms. Mejia's state-law claim, especially in the light of the tolling provision found in 28 U.S.C. § 1367(d). *See Artis v. District of Columbia*, 583 U.S. 71, 75 (2018).

In accord with the guidance supplied by the Supreme Court and the Eleventh Circuit, the court **DISMISSES** Ms. Mejia's vicarious-liability claim against Luxe **WITHOUT PREJUDICE** to her ability to refile in state court. Therefore, the motion for summary judgment filed by Luxe is **DENIED** as **MOOT**.

## IV.   CONCLUSION

The motion for summary judgment filed by the City is **GRANTED**. The court **DISMISSES** Ms. Mejia's vicarious-liability claim against Luxe **WITHOUT**

13

**PREJUDICE** to her ability to refile in state court. The motion for summary judgment filed by Luxe is **DENIED** as **MOOT**. The Clerk of Court is **DIRECTED** to close the case.

      **DONE** and **ORDERED** this 8th day of August, 2024.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE